UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KAREN G. D'ONOFRIO<br>    Plaintiff, | § § § | |
| v. | § § § | CIVIL ACTION NO.4:15-cv-00753 |
| VACATION PUBLICATIONS, INC.<br>    Defendant. | § § § | |

### DEFENDANT VACATION PUBLICATIONS, INC.'S
### TRADITIONAL MOTION FOR FINAL SUMMARY JUDGMENT

Defendant Vacation Publications, Inc. ("Vacation") files this Traditional Motion for Final Summary Judgment against Karen G. D'Onofrio ("Karen") and Michael D'Onofrio ("Michael") pursuant to Fed. R. Civ. P. 56.

**Summary of argument**

1. Michael and Karen conspired to wrongfully and secretly exploit the confidential information and specialized training exploit the confidential information and specialized training Karen obtained through her employment with Vacation to develop and grow a competing business in violation of her common law fiduciary duties and the covenants not to compete in her employment agreement. Karen had no experience with booking cruise-related travel prior to her employment with Vacation. She and Michael created a business which is a franchisee of Cruise One, a major competitor of Vacation, and utilized her specialized training and Vacation's trade secret information to siphon off business from Vacation while she was still employed there. As part of the scheme, Karen fraudulently applied for FMLA leave, claiming a fictitious necessity to care for her allegedly disabled husband when she instead traveled alone to Florida to undergo a week of training with Vacation's direct competitor. Karen then deliberately and intentionally

misinterpreted Vacation emails relating to her FMLA leave to concoct a false argument that her employment by Vacation was terminated. In fact, Karen was never terminated by Vacation, but voluntarily resigned in order to carry on, with Michael, her new business as a franchisee of Vacation's competitor. Vacation requests that the Court grant summary judgment dismissing Karen's FMLA claims, awarding judgment for Vacation against Michael and Karen on its claims against them, and awarding to Vacation actual damages, exemplary damages, attorney fees, and costs of court.

**Facts**

**A. Karen works for Vacation and enters into covenants not to compete**

2. In September 2012, Karen applied to work as a Sales/Accountant Manager at Vacation[1]. *See* [Doc. 27], a true and correct copy of which is attached as Exhibit 1. Karen had no prior employment in travel sales. Exhibit 2, a true and correct copy of Karen's resume and employment application; Exhibit 3, a true and correct copy of Excerpts from the Deposition of Karen G. D'Onofrio, at Page 54, Lines 7-9 (admitting that before 2012, Karen was never employed to work in travel sales). Karen was hired by Vacation as a travel agent on or about September 24, 2012. Exhibit 3, at Page 53, Lines 2-9; *see also* Exhibit 1.

3. Karen entered into the Employment at Will Agreement (the "Agreement") with Vacation. Exhibit 4 is a true and correct copy of the Agreement. Karen agreed that she was to receive specialized training, client information, and access to Vacation's confidential and proprietary information. *Id.* at Section 5. Karen received from Vacation specialized training, customer information, and access to confidential and proprietary information. Exhibit 5, a true and correct copy of the Affidavit of Thain Allen. Karen agreed not to compete with Vacation or

---

[1] For the sake of clarity and simplicity, "Vacation" will refer to Vacation Publications, Inc. and its subsidiary/assumed name, Vacations to Go.

solicit Vacation's employees and customers while employed with Vacation and for eighteen (18) months thereafter. Exhibit 4, at Sections 6, 7, and 11; *see also* Exhibit 6, a true and correct copy of the Affidavit of Emerson Hankamer. Karen also agreed not to use Vacation's methods of doing business or any other Confidential Information (as defined in the Agreement) for her own benefit or for any purpose. Exhibit 4, at Section 6. She also agreed to return all Vacation-related documents upon termination of her employment. *Id*. at Section 3.

### B. Karen and Michael start a competing business

4. Michael and Karen contacted Cruise One, Inc. ("Cruise One") to work for Cruise One on or before February 9, 2014. Exhibit 7, a true and correct copy of email correspondence. Cruise One is a direct competitor of Vacation; both companies book cruise and other cruise-related travel reservations. Exhibit 5. Michael and Karen delivered to Cruise One Vacation's computer screen shots of Karen's sales at Vacation and expressed concern about Karen's obligations under the Agreement. Exhibit 7; Exhibit 8, a true and correct copy of Excerpts from the Deposition of Michael D'Onofrio, at Page 44, Lines 9-14.

5. The D'Onofrios used as an assumed name Tranquility Base Enterprises ("Tranquility"). Karen is a fifty percent (50%) owner (Michael owns the remaining fifty percent) of and had "complete authority" over Tranquility. Exhibit 9, a true and correct copy of email correspondence. Michael also informed Cruise One that Karen planned to leave Vacation at the end of April 2014. *Id*.; *see also* Exhibit 10, a true and correct copy of email correspondence (telling a friend that Karen had planned on leaving Vacation).

6. In March 2014, Karen executed the Franchise Agreement between Tranquility and Cruise One; she represented to Cruise One that she was a fifty percent (50%) owner of Tranquility. Exhibit 11, a true and correct copy of the Franchise Agreement. In mid-July 2014,

while still employed by Vacation and while on FMLA leave – purportedly to take care of Michael – Karen traveled to Florida to receive Cruise One training. Exhibits 12 (a true and correct copy of email correspondence), 13 (a true and correct copy of Karen's calendar for July 2014), 14 (a true and correct copy of email correspondence), and 15 (a true and correct copy of email correspondence). Karen has managed the Tranquility office and trained its personnel (Exhibits 16 and 17, which are true and correct copies of email correspondence), marketed and solicited for Tranquility (Exhibit 17; Exhibits 18 through 22, which are true and correct copies of email correspondence, a flier, and photographs); *see also* Exhibit 8, at Page 68, Line 21 – Page 71, Line 3), and oversaw and performed travel bookings for Tranquility (Exhibits 23 through 33[2], which are true and correct copies of email correspondence) – each of which violates her contractual and common law duties not to compete with Vacation.

7. Karen and Michael were nervous about the risks of discovery by Vacation of Karen's involvement with Tranquility and fraudulently tried to conceal her involvement. Exhibits 7, 9, 19, and 34 through 36 (which are true and correct copies of email correspondence); *see also* Exhibit 8, at Page 39, Lines 10-13; Page 48, Lines 1-12; Page 49, Lines 11-24. They sought to remove (with backdated documentation) her as an owner of the Cruise One franchise. Exhibits 37 through 41 (which are true and correct copies of email correspondence that led to the Assignment and Assumption Agreement). They changed her role to associate of Tranquility in the spring of 2015. Exhibit 38. Karen and Michael actively competed with Vacation and tried to conceal it.

### C. Karen takes FMLA leave at Vacation

8. On July 9, 2014, Karen requested FMLA leave from Vacation to take care of

---

[2] Exhibit 32 to the Motion is correspondence about Michael and Karen working on booking new travel for someone in April 2015 who had just booked a cruise with Vacation in August 2014. *See* Exhibit 69 for discussion.

Michael because of his purported health issues; she represented that Michael required "constant attention" and is at "risk to fall." Exhibit 42, at page Bates-labeled VTG000009 (which is a true and correct copy of email correspondence); *see also* Exhibit 43 (which is a true and correct copy of Karen's FMLA leave form).  Vacation and Karen discussed the FMLA process and Karen's work options while on leave.  Exhibit 1.  She chose to retain full commissions for her clients' existing bookings provided that she monitor her emails every few days and stay in communication with those clients to continue to provide service.  *Id*.; Exhibits 44 and 45 (which are true and correct copies of email correspondence); Exhibit 3, at Page 85, Lines 24-25 and Page 87, Line 18 – Page 88, Line 3.  Vacation reserved the right to bring the existing reservations in-house to be handled by someone else at Vacation if Karen was not able to handle her responsibilities in maintaining the existing reservations.  Exhibit 1; Exhibit 44; *see also* Exhibit 3, at Page 86, Lines 6-16 (Karen knew that an option was to have all of her customers serviced by someone else at Vacation while Karen was on FMLA leave) and Page 91, Lines 11-23.

9.   Instead of taking care of Michael's daily health needs and servicing her Vacation clients, Karen went to Florida alone for Cruise One training.  *Compare* Exhibit 12 *with* Exhibit 46 (a true and correct copy of Michael's medical visits in July 2014 showing that Karen could not have taken Michael to at least two medical appointments during her Cruise One training).  A month into Karen's FMLA leave, she and Michael took their children on a cruise.  Exhibit 47, a true and correct copy of email correspondence; Exhibit 3, at Page 109, Lines 13-23.  There were other times during Karen's FMLA leave when Karen and Michael were apart such that Karen did not provide health care for Michael.  Exhibits 48 through 54 (true and correct copies of email correspondence relating to Michael's travel); Exhibit 3, at Page 110, Line 5 – Page 111, Line 3.

10. During her FMLA leave, Karen failed to check her Vacation email and voice mail accounts to maintain her existing clients' bookings, as she had promised to do. Exhibit 1; Exhibits 55 through 57, true and correct copies of email correspondence. On August 11, 2014, Vacation arranged to have Karen's then-existing bookings handled "in house" because she was not attending to them. Exhibit 5; Exhibit 1; Exhibit 58, a true and correct copy of email correspondence. That same day, Vacation stated that all managers should tell Karen's clients that she is on a leave of absence and will return to work at Vacation. Exhibit 59, a true and correct copy of email correspondence. Vacation sent emails to Karen's clients with active booking to explain that other agents would handle their bookings while Karen was on leave. There were twenty-five (25) emails sent to Karen's active clients by Annette Blumrick and Cherilyn Tamcke that stated correctly that Karen was on a leave of absence. Exhibits 60 and 61, true and correct copies of email correspondence. However, Stuart Gillan sent to Karen's active clients twenty-three (23) emails stating incorrectly that Karen was no longer working with Vacation. Exhibit 62, true and correct copies of email correspondence. One of the Gillan emails went to Michael, since he booked travel through Karen at Vacation.

11. Karen had never met Gillan and had no idea who he was; she did not know whether he had the ability to terminate her employment at Vacation. Exhibit 3, at Page 123, Lines 7-17. She failed to undertake any efforts to investigate the status of her employment at Vacation, even though seeing the email sent from Tamcke would have reassured her that Vacation still considered her to be on FMLA leave. Exhibit 3, at Page 122, Lines 4-7; Page 119, Line 23 – Page 120, Line 1; Page 122, Line 18 – Page 123, Line 7; Page 129, Lines 5-9. In late August 2014, Karen filed for unemployment benefits with the Texas Workforce Commission. In response to Karen's Texas Workforce Commission complaint, Vacation stated that Karen was

still employed but on FMLA leave.  Exhibit 63, a true and correct copy of Vacation's response to the Texas Workforce Commission.

### D.  Karen resigns from Vacation

12.     When Karen was scheduled to return to Vacation from her FMLA leave, Vacation notified Karen that her leave had expired and inquired whether Karen would return to work.  Exhibit 64, a true and correct copy of email correspondence.  Karen responded that she was not returning to work because she believed that she was fired through Gillan's emails.  Exhibit 65, a true and correct copy of email correspondence; *see also* Exhibit 3, at Page 131, Lines 4-19.  Karen resigned.  Exhibits 66 and 67, true and correct copies of email correspondence.  Karen failed and refused to return to Vacation any of the confidential and proprietary information given to her by Vacation.  Exhibit 3, at Page 59, Lines 7-17; Exhibit 5; and Exhibit 65.

### E.  Michael and Karen earned commissions when Karen was subject to covenants not to compete

13.     Michael and Karen received at least $26,126.20 in gross commissions through their travel work at Tranquility.  Exhibit 68, a true and correct copy of Tranquility's commissions earned and due.  These commissions were earned within the eighteen (18) month period following Karen's resignation from Vacation.  *See* Exhibit 4, at Section 6.  Tranquility may be due additional commissions for travel that has been booked but has not yet sailed.  Vacation has suffered injuries in the sum of at least $32,657.75.  *See* Exhibit 69, Affidavit of Robert Baker.  Exhibit 70, Affidavit of Seth A. Miller.

## Argument and authority

### A.  Summary judgment should be granted on Karen's FMLA claims

14.     The FMLA entitles eligible employees to twelve workweeks of leave in any 12–month period for various qualifying events, including caring for a spouse with a serious health

condition. 29 U.S.C. § 2612(a)(1)(C). To establish a claim for retaliation under the FMLA, the plaintiff must first make a *prima facie* case that: "1) she was protected under the FMLA; 2) she suffered an adverse employment decision; and either 3a) that she was treated less favorably than an employee who had not required leave under the FMLA; or 3b) the adverse decision was made because [s]he took leave." *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001). If the plaintiff establishes her prima facie case, the defendant must show "a legitimate ... nonretaliatory reason for the employment action." *Id*.

15.     To establish a *prima facie* interference case, Karen must show that (1) she was an eligible employee, (2) Vacation was an employer subject to the FMLA's requirements, (3) she was entitled to leave, (4) she gave proper notice of her intention to take FMLA leave, and (5) Vacation denied her the benefits to which she was entitled under the FMLA. *Lanier v. Univ. of Texas Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013).

### *Karen attempted to abandon her FMLA claims*

16.     Karen's FMLA claims are baseless and frivolous; she even tried to abandon them by filing a motion to dismiss. *See* [Docs. 39 and 40] ("Defendant has recently produced documents in this litigation that relate to Ms. D'Onofrio's termination at Vacation Publications. After further review of these documents, Plaintiff no longer wishes to pursue her FMLA claims against Vacation Publications."). Vacation opposed her motion to dismiss in order to pursue its claims against Karen and Michael for damages, attorney fees, injunctive relief, and findings by this Court of (a) fraud by Karen and Michael and (b) the enforceability of Karen's contractual covenants not to compete with Vacation or misappropriate confidential, proprietary, and trade secret information of Vacation.

*There was no adverse employment decision by Vacation*

17.     There was no adverse employment decision by Vacation. Karen intentionally misconstrued the Gillan email and fraudulently contends that Vacation terminated her employment. Karen did not ask Vacation whether she was terminated. Exhibit 3, at Page 116, Line 20 – Page 120, Line 1; Page 122, Lines 4-7; and Page 122, Lines 20-25. Had she contacted Vacation, Vacation would have confirmed that she was on a leave of absence. Exhibit 3, at Page 123, Line 18 – Page 124, Line 7; Exhibit 5. When her FMLA leave expired, Karen failed and refused to return to work. Exhibit 65. The Gillan email is being fraudulently exploited by Karen and is a pretext for Karen's desire to quit working at Vacation. Exhibits 7 and 10.

18.     Summary judgment should be granted against Karen because there was no adverse employment decision by Vacation as a matter of law. Karen voluntarily resigned. *See McFadden v. Seagoville State Bank*, No. 3:08-CV-0467-B, 2009 WL 37596 (N.D. Tex. Jan. 6, 2009) (dismissing an FMLA claim because plaintiff voluntarily resigned).

*Karen misused her FMLA leave*

19.     Summary judgment should be granted because Karen misused her FMLA leave by failing to be in close and continuing proximity to Michael. Karen requested FMLA leave so that she could take care of Michael. During Karen's FMLA leave, both Michael and Karen traveled separately. Exhibits 12 through 15; Exhibits 48 through 54; Exhibit 3, at Page 110, Line 5 – Page 111, Line 3. Michael testified that Karen wanted "a break" from taking care of Michael when she went to Florida for training at Vacation's competitor. Exhibit 8, at Page 32, Lines 10-15.

20.     Karen was not in close and continuing proximity to provide care for Michael during these times. *Baham v. McLane Foodservice, Inc.*, 431 F. App'x 345, 349 (5th Cir. 2011)

(affirming summary judgment when employee was not in close and continuing proximity to the family member for whom he was supposed to provide care); *see also Alsoofi v. Thyssenkrup Materials NA, Inc.*, No. 09-CV-12869, 2010 WL 973456, at *6 (E.D. Michigan Mar. 15, 2010) (granting summary judgment where employee made non-medical travel without the family member for whom he was supposed to provide care); *Boecken v. Gallo Glass Co.*, 412 F. App'x 985 (9th Cir. 2011) (finding employee misused FMLA leave when he was walking in the park without the family member for whom he was supposed to provide care); *Tellis v. Alaska Airlines, Inc.*, 414 F.3d 1045 (9th Cir. 2005) (holding employee's trip to retrieve the family car and phone calls to his wife while he was away cannot as a matter of law be considered "caring for" his wife under the FMLA); *Katoula v. Detroit Entertainment, LLC*, 557 F. App'x 496, 498 (6th Cir. 2014) (finding that employee did not use his FMLA leave to actually take care of his relative); *Tayag v. Lahey Clinic Hosp., Inc.*, 632 F.3d 788, (1st Cir. 2011) (affirming summary judgment where district court found employee's travel was "effectively a vacation"); *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 681 (7th Cir. 1997) (no interference when employee misuses FMLA); *Hamilton v. Republic Airways Holdings*, No. 1:12-CV-01614-SEB-DML, 2014 WL 2968596, at *7 (S.D. Ind. July 2, 2014) (granting summary judgment where employer suspected that employee was attempting to misuse her FMLA leave).

### B. Summary judgment should be granted on Vacation's claims against Karen and Michael

*Breach of contract against Karen*

21.     Vacation and Karen entered into the Agreement. Exhibit 4. Vacation performed under the Agreement. Karen breached the Agreement. *See* Exhibits 4, 11, and 12 through 41. Such breaches have caused Vacation actual damages in the sum of $32,657.75. *See* Exhibit 69.

*Permanent injunction against Karen and Michael*

22.     The covenants not to compete with Vacation, and not to misappropriate or disclose Vacation's confidential information, are reasonably tailored to protect Vacation's legitimate business interests.  Exhibit 5.  There is no dispute that before coming to work for Vacation Karen had no prior experience in the travel industry.  Exhibit 2; Exhibit 3, at Page 54, Lines 7-9.  There is no dispute that Karen and Michael's Cruise One franchise could not have started without her.  Exhibit 17 (". . . so thanks to Cruise One, but mostly to my lovely wife, who got us started in this business.").  This Court should enter summary judgment permanently enjoining Michael and Karen from competing with Vacation and from misappropriating or disclosing Vacation's Confidential Information.  *See* Exhibits 4, 11, and 35.

23.     This Court may grant injunctive relief in this matter without an evidentiary hearing; an evidentiary hearing is not an indispensable requirement.  *Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 893 (1st Cir. 1988) (affirming that an evidentiary hearing is not required before issuing an injunction) (citing *Syntex Ophthalmics, Inc. v. Tsuetaki*, 701 F.2d 677, 682 (7th Cir. 1983) (evidentiary hearing not mandated where "evidence already in the district court's possession" enabled it to reach reasoned conclusions); *Town of Burlington v. Department of Education*, 655 F.2d 428, 433 (1st Cir. 1981) (evidentiary hearing not essential where parties exercised ample opportunity to make written submissions and plaintiff failed to submit affidavits or make offers of proof); *SEC v. Frank*, 388 F.2d 486, 490 (2d Cir. 1968).  The critical facts are undisputed and the documents that Michael and Karen produced support injunctive relief.

*Conversion of confidential and proprietary information and trade secrets against Karen and Michael*

24.     Vacation owns its confidential, proprietary, and trade secret information.  Exhibits 4, 5, and 6.   Vacation delivered to Karen and Karen took confidential and proprietary

information, client and customer lists, methodologies, and trade secrets, all of which belong to Vacation. *See* Exhibit 65 (showing she wrongfully retained Vacation documents); Exhibit 3, at Page 59, Lines 7-17; Exhibit 3, at Page 54, Lines 7-9; Exhibit 17 (". . . so thanks to Cruise One, but mostly to my lovely wife, who got us started in this business."). Karen has wrongfully exercised control over Vacation's trade secret information; she has used the information for her benefit and for the benefit of Vacation's competitors – to the detriment of Vacation. Such conversion has caused Vacation actual damages in the sum of $32,657.75. *See* Exhibit 69. Vacation further requests that Vacation recover exemplary damages in at least the sum of $50,000 for Karen's malicious conduct. *See, e.g.*, Exhibit 35 ("screw VTG non-compete").

*Conspiracy to convert Vacations confidential, proprietary, and trade secret information against Michael*

25. Michael and Karen had a meeting of the minds to convert the confidential and proprietary information and trade secrets of Vacation for his benefit, for the benefit of Tranquility, and to the detriment of Vacation. *See* Exhibits 7 (showing that Michael and Karen used Vacation computer screen shots to start working with Cruise One), 16 (stating that Karen will train and manage Tranquility), 17 (stating Karen got Michael started in the [travel] business), and 30 (stating Karen is an expert). As a result, Vacation has been directly and proximately damaged in the sum of $32,657.75. *See* Exhibit 69. Vacation further requests that Vacation recover exemplary damages in at least the sum of $50,000 for Michael's malicious conduct.

*Tortious interference with existing business relations against Karen and Michael*

26. Vacation had travel bookings with its clients. Karen and Michael willfully and intentionally interfered with those contracts. *See, e.g.*, Exhibits 32 and Exhibit A to Exhibit 69. Such interference proximately caused Vacation injury in the sum of $32,657.75. Exhibit 69.

Vacation further requests that Vacation recover exemplary damages in at least the sum of $50,000 for Michael and Karen's willful and malicious conduct.

### *Conspiracy to tortiously interfere with existing business relations against Michael*

27.	Michael formed a combination to accomplish an unlawful purpose, or a lawful purpose by unlawful means. Michael and Karen had a meeting of the minds to tortiously interfere with Vacation's existing business relations. *See, e.g.*, Exhibits 7, 9, 11, 18, and 24. As a result, Vacation has been directly and proximately damaged in the sum of $32,657.75. *See* Exhibit 69. Vacation further requests that Vacation recover exemplary damages in at least the sum of $50,000 for Michael's malicious conduct.

### *Tortious interference with prospective business relations against Karen and Michael*

28.	There is a reasonable probability that Vacation would have entered into a business relationship with those clients who either previously booked travel with Vacation or who contacted Vacation for travel bookings. Karen and Michael diverted and intentionally interfered with those relationships. *See, e.g.*, Exhibits 18 and 32. Such interference proximately caused Vacation injury in the sum of $32,657.75. Exhibit 69. Vacation further requests that Vacation recover exemplary damages in at least the sum of $50,000 for Michael and Karen's willful and malicious conduct.

### *Breach of fiduciary duty against Karen*

29.	Karen owes a fiduciary duty to Vacation because she was an employee and agent. *Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins.*, 235 S.W.3d 695, 700 (Tex. 2007) (an agent owes fiduciary duties to her principal); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 201-202 (Tex. 2002) (during their employment, employees owe a fiduciary duty to their employers and are obligated to act in their employers' interests). Karen breached her fiduciary duty to Vacation

when she competed against Vacation and when she used her FMLA leave to further her efforts to compete by attending Cruise One training. Such breaches of the duties of (a) loyalty and utmost good faith, (b) candor, (c) refraining from self-dealing (which extends to dealings with a fiduciary's spouse), (d) acting with integrity of the strictest kind, (e) fair and honest dealing, and (f) full disclosure have caused Vacation actual damages in the sum of $32,657.75. *See* Exhibit 69. Such breaches were intentional; Vacation requests that Vacation recover exemplary damages in at least the sum of $50,000 for Karen's intentional breach. *See, e.g.*, Exhibit 35 ("screw VTG non-compete").

### *Aiding and abetting breach of fiduciary duty against Michael*

30. Michael engaged in conduct that aided and abetted Karen's breach of her fiduciary duty to Vacation. He knew that he and Karen should not have competed with Vacation because she was violating her duties to Vacation. *See, e.g.*, Exhibit 8, at Page 39, Lines 10-13; Page 48, Lines 1-12; Page 49, Lines 11-24. Michael intended to assist Karen in committing her breaches of fiduciary duty. Exhibits 7, 11, 19, and 32. Michael personally encouraged, assisted, and benefitted from Karen's breaches; his assistance and encouragement was a substantial factor in causing the tort. *Id.*; *see also* Exhibits 7 and 17 through 33. Vacation suffered actual damages in the sum of $32,657.75. *See* Exhibit 69. Vacation requests that Vacation recover exemplary damages in the sum of at least $50,000 for Michael's aiding and abetting Karen's intentional breach.

### *Common law fraud against Karen*

31. Karen's statements regarding the need to take FMLA leave from July 11, 2014 through October 3, 2014, were fraudulent. As part of Michael and Karen's scheme to compete against Vacation, Karen took FMLA leave to attend a Cruise One training course. Exhibits 12

through 15. Karen made to Vacation material misrepresentations regarding the circumstances for taking FMLA leave that, when made, Karen knew were false. Vacation relied on the representations by Karen. Exhibit 5. Karen's representations caused Vacation injury in the sum of $32,657.75. Exhibit 69. Vacation further requests that Vacation recover exemplary damages in the sum of at least $50,000 for Karen's willful and malicious conduct.

### *Fraud by nondisclosure against Karen*

32. Karen concealed that she was conspiring with Michael to directly compete against Vacation as a 50% owner of a franchisee with Cruise One while she was employed full-time by Vacation. *See* Exhibit 11. Karen also failed to disclose to Vacation her plan to take FMLA leave so that she could travel alone to obtain Cruise One training. *See* Exhibits 12 through 15; Exhibits 42 and 43. Karen had a duty to disclose the facts to Vacation; such facts were material to her employment relationship with Vacation. Exhibit 5. Karen knew that Vacation was ignorant of the facts and that Vacation did not have an equal opportunity to discover the facts. *Id*. Karen was deliberately silent when she had a duty to speak. By failing to disclose the facts, Karen intended to induce Vacation to allow Karen her FMLA leave and refrain from terminating her. *Id*. Vacation relied on Karen's nondisclosure - by, *inter alia*, allowing her to take FMLA leave and to continue to allow her access to Vacation's confidential information, including client lists and contact information; to service clients; and the right to earn commissions. *Id*. Karen's nondisclosure caused Vacation injury in the sum of $32,657.75. Exhibit 69. Vacation further requests that Vacation recover exemplary damages in the sum of at least $50,000 for Karen's willful and malicious conduct.

### Request to file motion for fees and costs

33. If this Court grants summary judgment disposing of Karen's FMLA claims or

Vacation's claims for (a) misappropriating and converting trade secrets, (b) breach of contract, or (c) breach of fiduciary duty, Vacation respectfully requests permission to file an application for its fees and costs within fourteen days of the entry of final judgment pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and LR 54.2 of the Local Rules for the Southern District of Texas.

## Conclusion

34. Defendant Vacation Publications, Inc. requests that this Court enter summary judgment against Karen G. D'Onofrio and Michael D'Onofrio, and grant all other relief to which Vacation Publications, Inc. is entitled.

Respectfully submitted,

**MICHAEL JAY KUPER**

By: */s/ Michael Jay Kuper*
   Michael Jay Kuper
   Texas Bar No. 11765000
   Federal ID No. 6721
   Attorney-in-Charge for Vacation
   Publications, Inc.
   2901 Via Fortuna Drive, Suite 500
   Austin, Texas 78746
   512.874.3895 - telephone
   713.892.4800 - fax
   mkuper@kuperlawfirm.com

ATTORNEYS FOR VACATION
PUBLICATIONS, INC.

OF COUNSEL:

**NATHAN SOMMERS JACOBS**
A Professional Corporation
George R. Gibson
Texas Bar No. 00793802
Federal ID No. 19879
Seth A. Miller
Texas Bar No. 24055977
Federal ID No. 724733
2800 Post Oak Boulevard, 61st Floor
Houston, Texas 77056-6102
713.960.0303 - telephone
713.892.4800 - fax
ggibson@nathansommers.com
smiller@nathansommers.com

## CERTIFICATE OF SERVICE

I certify that Defendant Vacation Publication, Inc.'s Traditional Motion for Final Summary Judgment was served as shown below on August 14, 2015.

| | |
|---|---|
| Mary Alice Parsons<br>Hext & Parsons LLP<br>2014 Bissonnet Street<br>Houston, Texas 77005 | By E-Mail (mparsons@hptxlaw.com) |
| Karen D'Onofrio, *pro se*<br>2104 Brook Haven Drive<br>League City, Texas 77573 | By E-Mail (KLBGD.4.86.89.06.074EVER@gmail.com) |

                                          */s/ Seth A. Miller*
                                            Seth A. Miller